# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LEVI A. LORD,<br><br>                Plaintiff,<br><br>v.<br><br>JOSEPH BEAM, CHRISTOPHER PASS, LISA STOFFEL, and CHRISTOPHER P. O'NEAL,<br><br>                Defendants. | Case No. 18-CV-351-JPS<br><br>**ORDER** |

**1.    INTRODUCTION**

On May 14, 2018, Magistrate Judge William E. Duffin screened Plaintiff's complaint. (Docket #15). Magistrate Duffin allowed Plaintiff to proceed on a claim that Defendants had allegedly failed to appropriately address Plaintiff's threat of self-harm, in violation of his rights under the Eighth Amendment. *Id.* at 3–5. The action was reassigned to this branch of the Court on May 30, 2018. On October 31, 2018 and November 1, 2018, Plaintiff and Defendants respectively filed motions for summary judgment. (Docket #25 and #28). For the reasons explained below, Defendants' motion must be granted and Plaintiff's denied as moot.

**2.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit"

under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3. **RELEVANT FACTS**[1]

At all times relevant, Plaintiff was an inmate at Waupun Correctional Institution ("Waupun"), and Defendants were correctional officers employed there. On December 10, 2017, Plaintiff was being housed in Waupun's restrictive housing unit where Defendants worked. That morning, Plaintiff called to Defendant Lisa Stoffel ("Stoffel") while she escorted another inmate to the shower. Plaintiff was visibly masturbating near his cell's open trap door, and as Stoffel turned to look at him, he made direct eye contact with her. This is, of course, a violation of prison rules and Stoffel told Plaintiff he would receive a conduct report for his behavior.

Defendant Joseph Beam ("Beam") then came to Plaintiff's cell to reiterate that Plaintiff's actions were inappropriate. Plaintiff claims that Beam said nothing, but instead it was Plaintiff who told Beam he was suicidal and had a razor blade. Later that morning, Stoffel and Defendant Christopher Pass ("Pass") went back to Plaintiff's cell to issue the conduct

---

[1]Plaintiff's factual submissions are largely non-compliant with the applicable rules of procedure, despite the fact that he was provided with those rules numerous times. He often fails to properly dispute a fact or contends, without a valid basis, that certain facts are irrelevant. *See generally* (Docket #38). The Court has generously overlooked many of Plaintiff's procedural missteps, as doing so does not change the outcome of this Order.

report. Plaintiff says he informed both Stoffel and Pass of his suicidal feelings. The officers then left Plaintiff's cell.

A few minutes later, Plaintiff called to Pass, asking that Pass bring Stoffel back to Plaintiff's cell so they could speak. Pass refused and left the area. Plaintiff asserts that he repeated to Pass that he had a razor blade and intended to hurt himself. In a related conduct report, Pass indicated that Plaintiff had said he would cut himself if he did not get to see Stoffel again.

With his supposed threats of self-harm being ignored, Plaintiff decided to activate his cell's emergency intercom in the late morning. An Officer Strunz responded but Plaintiff said nothing to him. Soon afterward, Defendant Christopher P. O'Neal ("O'Neal") went past Plaintiff's cell. O'Neal noticed some droplets of blood on the cell window. O'Neal says that he ordered Plaintiff to come to his door to be handcuffed, and that Plaintiff complied. Plaintiff counters that O'Neal had actually threatened to spray him with pepper spray, and when Plaintiff presented the razor blade, O'Neal knocked it away onto the floor.

O'Neal then radioed Beam for assistance. When Plaintiff's hands were secured, the officers removed him from his cell. They did not observe any noticeable injuries or active bleeding from Plaintiff, other than a small cut on his forearm. Plaintiff claims that he "had blood all down [his] arm." (Docket #38 at 8). Plaintiff further states that he had a sock tied to his arm which was also covered in blood.

Video footage of the incident directly contradicts Plaintiff's version of events. The video shows Plaintiff tossing the razor out of his cell and onto the floor at O'Neal's request. At no point did O'Neal use or even reach for his pepper spray. In handcuffing Plaintiff and removing him from the cell, the officers put on gloves, suggesting the presence of blood. However, the

video does not show any visible blood, and certainly not the profuse amount suggested by Plaintiff. Further, there was nothing tied to Plaintiff's arm when he was removed from the cell. Once Plaintiff was secured, the officers returned to retrieve the razor blade and inspect the area. Again, the video shows no observable trace of blood, though the officers are seen checking the soles of their shoes, presumably for blood spatter.

Plaintiff was then seen by a Nurse York ("York"). Her report stated that Plaintiff presented with four to five "superficial vertical cuts" in a one inch by one-and-a-half inch area on his forearm. (Docket #35-1). She noted that the cuts produced some fresh bleeding, and that Plaintiff also had some semi-dried blood down his forearm. *Id.* York cleaned the wound area and applied gauze. *Id.* Plaintiff was placed in clinical observation and was seen by psychological services later that day. Plaintiff received no further treatment for his cuts.

4. ANALYSIS

Plaintiff alleges that he told Defendants he was suicidal and threatened to hurt himself, and that Defendants did nothing to stop him. *See* (Docket #1 at 2–3). Plaintiff's allegations implicate his Eighth Amendment right to adequate medical care. Prison officials violate that right if they exhibit deliberate indifference to an inmate's serious medical needs. *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 422 (7th Cir. 2017). To show deliberate indifference, a plaintiff must prove that "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Normally, a completed or attempted suicide satisfies the "serious medical condition" element. *Pittman ex rel. Hamilton v. Cnty. of Madison*, *Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). However, a plaintiff still bears the burden to show that his suicidal ideation or the self-harm he inflicted was indeed "objectively [and] sufficiently" serious. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Prison officials' refusal to treat "the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention," does not violate the Eighth Amendment. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996).

The evidence demonstrates that Plaintiff did not have a serious medical need, either in suicidal ideation or in his self-inflicted wounds. As to the wounds, they were described by the nurse as "superficial" and required nothing but a brief cleaning and a single application of gauze. Plaintiff was not hospitalized and received no further treatment for the lacerations. This is not the type of serious injury, threatening either substantial pain or long-term adverse health effects, which would implicate Plaintiff's constitutional rights.

As to suicidal ideation, Plaintiff's mere say-so that he was suicidal does not create a triable issue of fact on the matter. Rather, all of the evidence is to the contrary. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Holt v. Ford Motor Credit Co.*, 275 F. App'x 553, 554 (7th Cir. 2008) (no genuine dispute of fact where plaintiff produced an affidavit swearing that he did not sign a contract and all other evidence

in the record suggested he did). Plaintiff fully admits to a disgusting sexual display towards Stoffel. Only after she refused to return to his cell did Plaintiff begin threatening to cut himself. Further, video evidence demonstrates that Plaintiff has lied about the events of December 10 in multiple, material ways, destroying his credibility as to his assertion of suicidal thoughts. Finally, and most damningly, Plaintiff's alleged suicide attempt was anything but; he barely scratched his arm with a piece of metal. This exceedingly minimal self-harm reinforces the view that Plaintiff did not have any real intention of seriously hurting himself. Taking this evidence together, no reasonable jury could conclude that Plaintiff was genuinely suicidal, rather than childishly seeking secondary gain, namely more direct contact with Stoffel.[2]

Plaintiff's conduct does not rise to the level of an objectively serious medical condition. Rather, it produced minor cuts that needed, at most, the most basic first aid treatment. Plaintiff's behavior was also entirely consistent with a desire to get what he wanted from prison staff, and entirely inconsistent with a genuine threat of serious self-harm. Because the first element of Plaintiff's claim is indisputably disproven, each of the Defendants are entitled to judgment in their favor.[3]

---

[2] As part of his submissions for his own summary judgment motion, Plaintiff provided certain medical records. (Docket #36-1). One such record is the psychologist's note which directed that Plaintiff be placed on observation after the cutting incident. *Id.* at 3. The note says Plaintiff was placed on observation for his safety because of his self-reported intention to kill himself. *Id.* The note is not the psychologist's diagnosis of genuine suicidal ideation, but rather an explanation of why observation was needed as a protective measure.

[3] Defendants further assert, assuming *arguendo* that Plaintiff presented a serious medical need, that they were not deliberately indifferent to a genuine and serious risk of self-harm. (Docket #29 at 9–11). Defendants also claim an entitlement to qualified immunity. *Id.* at 11–13. In light of Plaintiff's failure to

## 5. CONCLUSION

On the undisputed material facts presented, Defendants are entitled to judgment on Plaintiff's claim against them. The Court must, therefore, grant Defendants' motion for summary judgment and dismiss this action with prejudice. With the action dismissed, Plaintiff's motion for summary judgment must be denied as moot, (Docket #25), as well as a motion he filed related to his proposed findings of fact, (Docket #36).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to amend his proposed findings of fact (Docket #36) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Docket #28) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket #25) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of February, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

create a jury question on the first element of his deliberate indifference claim, the Court need not analyze these arguments.